UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONSTRUCTION RECRUITERS, INC.,<br>Plaintiff,<br>v.<br>LAWRENCE WISNIEWSKI, OCEAN STATE EXECUTIVE SEARCH AND ADVANCED BUILDING CONCEPTS,<br>Defendants. | C.A. NO.<br>CA 06 111S |

# VERIFIED COMPLAINT

Now comes Allen Colm, in his capacity as President of Construction Recruiters, Inc., and hereby testifies under oath as follows:

## I. INTRODUCTION

By this action, Plaintiff Construction Recruiters, Inc. ("CR"), an executive recruitment firm, seeks to enforce a confidentiality and non-competition agreement with a former contractor and employee, Defendant Larry Wisniewski. On January 16, 2006, Wisniewski voluntarily resigned his employment with CR and immediately placed a CR candidate Defendant Advanced Building Concepts, with a client of CR, in clear violation of his agreement with CR and in violation of Advanced Building Concepts' contract with CR.

Mr. Wisniewski is in a position to use, and has used, CR's goodwill with clients and candidates to compete with and divert business away from CR. He has and will continue to misappropriate and use confidential information and trade secrets belonging to CR to compete with CR. He has and will continue to interfere intentionally with CR's contractual relationships

with its clients and candidates. Unless restrained, Mr. Wisniewski's breach of his contract, misappropriation of trade secrets, intentional interference with CR's contractual relationships and unfair and deceptive actions will cause CR to suffer serious and irreparable loss.

## II. PARTIES

1. CR is a Massachusetts corporation with a principal place of business at 242 East Berkley Street, Boston, Massachusetts. CR was founded by Colm Allen, the Company President, six years ago.

2. Larry Wisniewski ("Wisniewski") is an individual residing at 158 Salina Street, Providence, Rhode Island.

3. Ocean State Executive Search is a company solely owned and controlled by Wisniewski. Plaintiff is informed and believes that Ocean State Executive Search is located at 158 Salina Street, Providence, Rhode Island.

4. Advanced Building Concepts ("ABC") is a company that has a principal place of business at 1077 Aquidneck Ave., Middleton, Rhode Island.

## III. JURISDICTION

5. This Court has original jurisdiction over this matter pursuant to 28 USC. 1332(a)(1).

6. There is diversity between the parties. The Plaintiff is a resident of Massachusetts and all the Defendants reside in Rhode Island.

7. The amount in controversy exceeds $75,000. Defendant Larry Wisniewski currently owes Plaintiff $19,000. Additionally, CR is owed a commission of $21,320 from ABC, which Wisniewski has asserted is due to him. Finally, Plaintiff is seeking an injunction

prohibiting Defendant Wisniewski from soliciting any of its clients for a year, pursuant to the terms of an agreement between the parties. Wisniewski generated nearly $300,000 in commissions during the twelve month period prior to his resignation from CR. Therefore, the injunction has an actual value well in excess of $75,000.00. Consequently, Plaintiff has satisfied the amount in controversy requirement of 28 USC 1332.

## IV. FACTS

8. CR is in the business of identifying, recruiting and placing candidates in management positions with client companies, most of whom are in the construction business.

9. To conduct its business, CR has identified certain companies that hire or may hire construction executives.

10. CR has made a significant investment in time and money over the past six years to identify construction companies who hire executives and to determine the specific needs, culture and organization of those companies to make the most successful placements possible. CR has also spent significant time and money identifying potential candidates who may be placed with its clients.

11. The founder and President of CR, Colm Allen, has spent extensive time and devoted a considerable amount of his own resources developing a base of clients and identifying candidates throughout New England, but primarily in Massachusetts and Rhode Island. CR's relationship with its clients and its data base of potential candidates is CR's most important asset.

12. Many, if not most, of CR's placements involve clients or candidates who have worked with CR in the past or who have referred other clients or candidates to CR. The formation of relationships and the establishment and maintenance of goodwill with clients and candidates is critical to the success of any recruiting company, including CR. Without such

established business relationships, it would be very difficult to make placements and identify qualified candidates. CR has also established a reputation for discretion and honesty in its business transactions. That reputation is critical to CR's continued success. The goodwill CR has formed with clients and with candidates is a valuable and essential component of the company's ability to do business.

13. CR has developed a comprehensive data base and extensive information about its current and prospective clients and candidates. CR has also developed policies, procedures and methods of operation that are critical to the Company's success and are not disclosed to the public. Such information and procedures are confidential trade secrets belonging to CR.

14. Individuals employed or retained by CR recruit and place candidates by using the Company's confidential trade secrets and the relationships CR has developed over time. That knowledge and those relationships enable the recruiter to understand the client's needs and identify candidates likely to satisfy those needs.

15. CR retained Wisniewski as a contractor in 2004. At that time, Wisniewski had no prior experience placing executive candidates with construction companies and had no relationships with, or information about, potential clients or candidates.

16. Because Wisniewski had no prior construction management placement experience, CR provided him with extensive training. Mr. Allen worked closely with Wisniewski, introduced him to key clients and helped him develop relationships with prospective clients – all on behalf of CR.

17. Specifically, as a necessary part of fulfilling his job requirements, Wisniewski learned CR's confidential information and trade secrets, including the identity of clients and candidates, client preferences, future plans and needs, and other information not known to those

outside CR. This knowledge and information was critical to Wisniewski's ability to place candidates.

18. At all times during his association with CR, Wisniewski worked exclusively for CR and recruited clients and candidates solely on behalf of CR, with CR's assistance and pursuant to CR's procedures and requirements. In early 2005, CR informed Wisniewski that, under new Massachusetts legal requirements, it was clear that he should be paid as an employee rather than an independent contractor. The company told Wisniewski that it wished to make an administrative adjustment, paying him under a W-2 rather than a form 1099.

19. In early May 2005, CR gave Wisniewski an agreement addressing certain aspects of Wisniewski's status and also protecting CR's goodwill and confidential information. (the "Agreement"). Wisniewski signed the Agreement on May 31, 2005. (A copy of the Agreement is attached as Exhibit 1.) The Agreement specifically stated that it was to be "governed by and construed in accordance with the laws of Massachusetts". (Exhibit 1, p.4).

20. The Agreement also contained the following clauses limiting Wisniewski's future activities.

> The Contractor agrees that s/he will not at any time during or after the term of this Agreement disclose the Company's Confidential Information or use it in any way, except on behalf of the Company, or with the advance permission of the Company's President. This Agreement applies to all Confidential Information belonging to the Company, including Confidential Information the Contractor acquired prior to the effective date of this Agreement <u>and Confidential Information produced by the Contractor's own efforts</u>.
>
> The Contractor further agrees, upon termination of this Agreement, to <u>return all Confidential Information to the Company</u>, including, but not limited to, all files, books, documents, computer disks or tapes, security and access codes and passwords, and other property belonging to or prepared on behalf of the Company, <u>including Confidential Information produced by the Contractor's own efforts</u>,

> and to refrain from making, retaining or distributing any copies of such information. The Contractor also agrees not to remove any Confidential Information from the Company's premises without the express, prior written consent of the Company.
>
> In the course of performing services for the Company, the Contractor will, and has, developed relationships with Clients and Candidates. Those relationships constitute goodwill belonging to the Company. To protect the Company's goodwill, the Contractor agrees that s/he will not, during the term of this Agreement and for a period of one year after the termination of this Agreement for any reason, directly or indirectly, <u>solicit or attempt to persuade any Client or Candidate with whom s/he had any contact during his/her employment with the Company to sever the Client's or Candidate's relationship with the Company or enter into any contractual or business arrangement with the Contractor that is competitive with the services provided by the Company</u>.

(Exhibit 1, ¶14-16). (emphasis added).

21. Wisniewski changed his status from contractor to employee on November 8, 2005. His duties, responsibilities, and the value of his total compensation package remained the same after that change in status. CR simply reported his compensation on a different tax form.

22. CR had a long-term relationship with Advanced Building Concepts ("ABC") and had a written "Engaged Search Agreement" with ABC, as required by Massachusetts law (the "Search Agreement" attached as Exhibit 2). That Search Agreement specifically provided that CR "will be the sole third party provider of search services for the specified engaged searches." (Exhibit 2, ¶9).

23. On information and belief, in early to mid January 2006, John Brooks, President of ABC, informed Wisniewski, CR's employee and agent, that he was engaging in a new executive search. Shortly thereafter, Wisniewski resigned from CR, without any advance notice. ABC subsequently sent CR formal notice of that search.

24. After Wisniewski's resignation, Colm Allen told Wisniewski that he would be

happy to work with him in the future and to maintain a cordial business relationship. However, Mr. Allen stated that he expected Wisniewski to honor his Agreement and not to "poach" CR's clients or candidates. Wisniewski acknowledged his obligation and assured Mr. Allen that he did not intend to compete with CR, but, rather, intended to sell toys.

25. In February 2006, CR learned that Wisniewski had placed a candidate, Jay Edwards, with ABC; filling the position about which ABC had notified CR prior to Wisniewski's resignation. Jay Edwards had been a candidate of CR prior to Wisniewski's resignation. The fee for that placement was $21,320 ("the Fee"). ABC had no written Recruiter Agreement with Wisniewski. However, Mr. Brooks informed Allen that Wisniewski pressed him to pay the Fee to Wisniewski, rather than CR. Wisniewski also urged Mr. Brooks to terminate his contract with CR and gave him an agreement to sign with Wisniewski.

26. On information and belief, Wisniewski resigned from CR in anticipation of placing a candidate with, and receiving a commission from, ABC, although such placement violated his agreement with CR and violated ABC's Search Agreement.

27. After Wisniewski's resignation, CR learned that Wisniewski had solicited assignments from other clients of CR and had approached other candidates of CR during his employment with CR.

28. At the time he resigned from CR, Wisniewski had received a commission on three placements that proved unsuccessful. Consequently, under the terms of the Agreement, he was required to repay those commissions to CR. The total amount Wisniewski owes CR for those failed placements is $19,850.

29. During the 12 month period prior to his resignation, CR received commissions totaling $299,470 from placements made by Wisniewski with CR's clients. The amount CR

received from Wisniewski's placements had increased every year of his association with CR. Consequently, CR anticipates that Wisniewski's placements with CR's clients during the 12 month period following his resignation will, if not enjoined, exceed $300,000.00.

30. On February 23, 2006, CR's attorney wrote Wisniewski stating that his placement of Mr. Edwards, a CR candidate, with ABC, a CR client, was a direct violation of his agreement not to compete with CR and that Wisniewski should cease his competitive activity immediately. (A copy of that letter is attached as Exhibit 3.) Wisniewski did not respond to that letter.

31. On February 23, 2006, CR's attorney also wrote Mr. Allen a letter concerning ABC's liability to CR in the event it paid the Fee to Wisniewski. (Exhibit 4). Mr. Allen forwarded that letter to Mr. Brooks. Mr. Brooks subsequently informed Mr. Allen that he would pay the Fee to Wisniewski on Friday, March 10, 2006 unless CR obtained a Court Order prohibiting ABC from making that payment. On March 1, 2006, CR's attorney wrote Mr. Brooks enclosing copies of the above letters and stating that payment to Wisniewski would violate Wisniewski's contract with CR. (Exhibit 5). CR's attorney received no response to those letters.

32. On March 6, 2006, CR's attorney informed Wisniewski that, if the parties could not reach a resolution, she had been instructed to file suit on behalf of CR. On March 7, 2007, CR's attorney and Wisniewski agreed that they had not been able to resolve their dispute. CR's attorney stated that CR would immediately file suit against Wisniewski.

33. On information and belief, Wisniewski has few, if any, significant assets. CR believes that, if the Fee is paid to Wisniewski, he will immediately spend it, rendering it impossible for CR to obtain damages due to his violation of his Agreement.

34. Based on Wisniewski's activities and statements made to CR and its agents, it is

clear that he intends to continue to use his former association with CR to place candidates with CR's clients and to solicit CR's candidates, all in violation of his Agreement. Such breach will cause CR serious and on-going damage for which monetary damages are inadequate.

**COUNT ONE**

**VIOLATION OF NON-COMPETE AGREEMENT BY WISNIEWSKI**

35. CR repeats paragraphs 1 through 34, above.

36. By introducing a candidate of CR to a client of CR, immediately after his resignation from CR, Wisniewski is violating the explicit terms of his Agreement with CR.

37. Wisniewski's violation of the non-compete clause of his Agreement is causing, and will cause, CR irreparable damage. Because of his association with CR, Wisniewski has relationships with clients of CR who are sources of current and future candidate placements. He also has relationships with current and repeat clients of CR. Those relationships constitute goodwill belonging to CR. Wisniewski can and has used CR's goodwill with those customers and sources of supply to compete with CR. Unless restrained, Wisniewski will wrongfully divert substantial business from CR and to himself and his company, Ocean State Executive Search.

38. In addition, Wisniewski possesses confidential and trade secret information critical to the success of CR's business. Unless restrained, such information would enable Wisniewski to take advantage of CR's work, relationships and investments over the past six years by exploiting CR's knowledge of clients and candidates and using CR's confidential methods and processes.

39. Wisniewski placed a CR candidate with ABC, a CR client, shortly after ABC notified CR of its search for an employee. CR is entitled to the commission on that sale.

40. Wisniewski's continued breach of his Agreement with CR has caused and will

continue to cause CR significant damages for which Wisniewski is responsible.

41. Unless the non-compete agreement is enforced, Wisniewski will continue to use CR's goodwill and confidential information to compete with and divert business from CR.

## COUNT TWO

## VIOLATION OF CONFIDENTIALITY AGREEMENT BY WISNIEWSKI

42. CR repeats paragraphs 1 through 41, above.

43. Wisniewski's Agreement with CR bars him from using or disclosing CR's confidential information and requires him to return all such information in his possession.

44. Through his employment with CR, Wisniewski learned CR's confidential information and trade secrets concerning the identity and preferences of companies who hire construction executives and the identity and resumes of potential candidates.

45. Wisniewski also possesses highly confidential information about CR's past placements, clients and current candidates, pricing structure, marketing techniques, its future plans, and potential prospects.

46. By retaining Confidential Information belonging to CR and using such information to compete with CR, Wisniewski is violating the explicit terms of his agreement with CR.

47. Wisniewski's breach has caused and is continuing to cause CR significant damages, for which Wisniewski is responsible.

48. Unless Wisniewski's breach of his employment contract is restrained, Wisniewski will use CR's confidential information to divert business from CR's clients and candidates and solicit referrals of future business in an amount which cannot be calculated and for which monetary damages cannot fully compensate CR.

## COUNT THREE

## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS CONTRACTUAL RELATIONSHIPS BY WISNIEWSKI AND OCEAN STATE EXECUTIVE SEARCH.

49. CR repeats paragraphs 1 through 48 above.

50. CR has written contracts with its clients and candidates, including ABC.

51. Wisniewski is aware of those contractual relationships and executed an Agreement prohibiting him from interfering with those contractual relationships for a period of one year.

52. In direct violation of his contractual and fiduciary obligations, Wisniewski has placed a CR candidate with ABC, a client of CR. He also pressured ABC to rescind its contract with CR, to pay the fee directly to him or his company, and to enter into a contract with him.

53. Wisniewski's actions were undertaken for an unlawful motive and by unlawful means and were intended to interfere with CR's advantageous contractual relationship with ABC.

54. Such interference will cause CR significant damages, for which Wisniewski is responsible.

55. Unless enjoined, Wisniewski intends to, and will, continue to interfere with CR's advantageous relationships with its clients and candidates for unlawful motives and by unlawful means.

## COUNT FOUR

## UNJUST ENRICHMENT BY WISNIEWSKI AND OCEAN STATE EXECUTIVE SEARCH

56. CR repeats paragraphs 1 through 55 above.

57. By placing a CR candidate with a CR client who notified CR of its need for an employee, Wisniewski violated his contractual and legal obligations to CR.

58. CR has demanded a fee from ABC for his illegal placement.

59. The fee from ABC, a client of CR, is due and payable to CR.

60. If ABC pays Wisniewski that fee, he and his company, Ocean State Executive Search will be unjustly enriched for his unlawful actions in violation of his Agreement with CR.

## COUNT FIVE

## VIOLATION OF TRADE SECRETS ACT

61. CR repeats paragraphs 1 through 60 above.

62. Wisniewski's misappropriation and use of confidential information about CR's clients and candidates, business practices and relationships violates both the Trade Secrets Act, R.I. Gen. Laws § 6-41-1 et seq. and Massachusetts' law protecting trade secrets, Mass. Gen. Laws ch. 93 §42A.

63. As a result of Wisniewski's unlawful activities, CR has suffered and, unless enjoined, will continue to suffer significant damages.

## COUNT SIX

## INTENTIONAL INTERFERENCE WITH ADVANTAGEOUS CONTRACTUAL RELATIONSHIP BY ABC

64. CR repeats paragraphs 1 through 63 above.

65. CR had a contract with Wisniewski that prohibited him from placing a candidate with ABC.

66. ABC was aware of that contract prior to making any payment to Wisniewski and was aware that any payment to Wisniewski violated Wisniewski's contract with CR.

67. By paying Wisniewski for his inappropriate and unlawful placement, ABC has unlawfully interfered with CR's contractual relationship with Wisniewski.

68. As a result of ABC's intentional interference with its contractual relationships, CR has suffered significant damages.

**COUNT SEVEN**

**BREACH OF CONTRACT BY ABC**

69. CR repeats paragraphs 1 through 68 above.

70. CR had a contract with ABC that provided that CR would be the "sole third party provider of search services".

71. ABC notified Wisniewski during his employment with CR about its search for a new candidate and subsequently provided written notification of the search to CR.

72. ABC is required by the terms of the Engaged Search Agreement with CR to use CR as its exclusive agent for a candidate search and to pay CR the fee for Mr. Edwards' placement.

73. ABC permitted Wisniewski to place a candidate, did not exclusively use CR as its agent and has failed to pay CR the placement fee, all in violation of its contract with CR.

74. ABC's breach of its contract with CR has caused CR significant damages, for which ABC is liable.

WHEREFORE, CR respectfully requests that this Court:

1. Issue a preliminary and permanent injunction enjoining Wisniewski from directly or indirectly:

a. contacting any client, prospective client or candidate of CR with whom he had any contact during his employment with CR for a period of one year;

b. using, disclosing or retaining CR's confidential information or trade secrets.

2. Issue an injunction ordering Wisniewski to return to CR all copies of any confidential information or trade secrets belonging to CR that he has in his possession, custody or control.

3. Order ABC to pay CR the commission for Jay Edward's placement, or, in the alternative, to deposit the funds pursuant to Fed. R. Civ. P. 67 in an interest bearing account pending final disposition of this action.

4. Order Wisniewski to pay CR all damages CR has and will incur due to Wisniewski's actions as alleged in this Complaint, together with CR's costs, attorneys fees and interest.

5. Order Wisniewski to pay CR's reasonable attorney's fees and costs incurred in enforcing Wisniewski's contract with CR pursuant to R. I. Gen. Laws § 9-1-45.

6. Order Wisniewski to pay exemplary damages and attorney's fees for violation of the Trade Secret Act.

7. Order ABC to pay CR all damages, plus attorney's fees, CR has incurred due to ABC's breach of its contract with CR, pursuant to R.I. Gen. Laws § 9-1-45.

8. Order such other and additional relief as the Court deems proper.

Respectfully submitted,
CONSTRUCTION RECRUITERS, INC.
By Its Attorneys,

Raymond A. Marcaccio, Esq. (#3569)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900

(401) 861-2922 Fax
ram@om-rilaw.com

Of Counsel:

Mary L. Marshall, Esq.
MARSHALL LAW GROUP
37 Walnut Street, Suite 300
Wellesley, MA 02481
(781) 235-4855
mlm@socialaw.com

Dated: March 9, 2006

**VERIFICATION**

I, Colm Allen, President of Construction Recruiters, Inc., hereby verify that the allegations set forth in this Verified Complaint are true and accurate based upon my information, understanding and belief.

[signature]
Colm Allen

STATE OF MASSACHUSETTS
COUNTY OF Suffolk

In Boston on this 9th day of March, 2006, before me personally appeared Colm Allen, to me known and known by me to be the person executing the foregoing instrument and he acknowledged said instrument, by him executed, to be his free act and deed.

[signature]
Notary Public

My commission expires: February 16, 2012

OFFICIAL SEAL
ASHLEIGH R. GRONDIN
NOTARY PUBLIC
COMMONWEALTH OF MASSACHUSETTS
My Comm. Expires Feb. 16, 2012