UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | |
|---|---|
| CONSTRUCTION RECRUITERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE WISNIEWSKI, OCEAN STATE EXECUTIVE SEARCH AND ADVANCED BUILDING CONCEPTS,<br><br>Defendants. | C.A. NO. 06-111S |

**MOTION FOR A TEMPORARY RESTRAINING ORDER**

Pursuant to Federal Rule of Civil Procedure 65(b), Plaintiff Construction Recruiters, Inc. ("CR") hereby moves that this Court issue a Temporary Restraining Order.

## I. NOTICE

Plaintiff's counsel gave final notice the morning of March 7, 2006 to Defendants Lawrence Wisniewski and Ocean State Executive Search that CR intended to seek an injunction in this matter. Additionally, Plaintiff's counsel gave final notice on the afternoon of March 8, 2006 to counsel for Defendant Advanced Building Concepts that it intended to seek an injunction in this matter.

## II. FACTUAL OVERVIEW

As stated in CR's Verified Complaint and the Memorandum of Law filed contemporaneously herewith:

CR is a Massachusetts corporation in the business of recruiting and placing candidates with client companies, primarily in the construction business.

In 2004, Defendant Wisniewski, a resident of Rhode Island, was retained and trained by CR to work as a recruiter. He had no prior experience as an executive recruiter and had no relationships with, or information about, potential clients or candidates. From his hire until his resignation on January 16, 2006, Wisniewski worked exclusively for CR, received support and assistance from CR in making placements, and used CR's client and candidate list to make placements.

During his tenure with CR, Wisniewski executed an Agreement, attached to the Verified Complaint as Exhibit 1, containing non-competition and confidentiality provisions.

Defendant Wisniewski is the sole proprietor of Defendant Ocean State Executive Search. After leaving CR, Wisniewski immediately violated his express non-competition and confidentiality obligations by soliciting CR's clients and placing CR's candidates using CR's confidential information on behalf of himself and Ocean State Executive Search.

## III. RELIEF SOUGHT

CR does not seek to prevent Defendant from working as a recruiter, it only seeks to prohibit Wisniewski from soliciting CR's clients or placing CR's candidates in violation of his Agreement. Therefore, in addition to the monetary damages CR seeks against Wisniewski,

Ocean State Executive Search and ABC, CR seeks an injunction directing Defendants Wisniewski, Ocean State Executive Search and ABC to:

1. Cease contacting any client or candidate of CR with whom Defendant Wisniewski had contact during his employment with CR;

2. Cease using, divulging or retaining CR's "confidential information" (as defined in the Agreement) and return to CR all copies of any confidential information they have in their possession.

CR also seeks an injunction directing ABC to pay CR the commission for Jay Edward's placement, or in the alternative, to deposit the funds pursuant to Fed. R. Civ. P. 67 in an interest bearing account pending final disposition of this action.

## IV. <u>IRREPERABLE INJURY</u>

For the reasons stated in CR's Verified Complaint, unless Defendants are enjoined from soliciting CR's clients and using CR's confidential information, CR will be irreparably harmed by Wisniewski's use and disclosure of CR's goodwill with its clients and candidates and Wisniewski's use and disclosure of CR's trade secrets, client lists, candidate information, and other confidential information which are solely the property of CR and its clients and candidates;

## CONCLUSION

For all the above stated reasons and the reasons stated in the Verified Complaint and Memorandum of Law submitted herewith, Plaintiff is entitled to a Temporary Restraining Order.

Respectfully submitted,
CONSTRUCTION RECRUITERS, INC.
By Its Attorneys,

Raymond A. Marcaccio, Esq. (#3569)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
ram@om-rilaw.com

Of Counsel:

Mary L. Marshall, Esq.
MARSHALL LAW GROUP
37 Walnut Street, Suite 300
Wellesley, MA 02481
(781) 235-4855
mlm@socialaw.com

Dated: March 10, 2006

## REQUEST FOR HEARING

Counsel hereby requests an evidentiary hearing for the above-captioned Motion. Counsel estimates one day will be required for such hearing.

**CERTIFICATION**

I hereby certify that a true copy of the foregoing *PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER* was hand delivered upon Larry Wisniewski, 158 Salina Street, Providence, RI 02908 and mailed to David Martland, Esq.[1], 1100 Aquidneck Ave., Middletown, RI, 02842, attorney for Defendant Advanced Building Concepts on the 10th day of March, 2006.

[1] Attorney Martland agreed to accept service on behalf of his client.

UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CONSTRUCTION RECRUITERS, INC.,<br><br>Plaintiff,<br><br>v.<br><br>LAWRENCE WISNIEWSKI, OCEAN STATE EXECUTIVE SEARCH AND ADVANCED BUILDING CONCEPTS,<br><br>Defendants. | ) | C.A. NO. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff Construction Recruiters, Inc ("CR") has filed a Motion seeking, inter alia, a temporary and permanent injunction prohibiting Defendant Lawrence Wisniewski, a former CR employee, from competing with CR in violation of his confidentiality and non-competition agreement with CR. CR has also moved that this Court enjoin Wisniewski from retaining or using CR's trade secrets and confidential information. Finally, CR requests that this Court order Advanced Building Concepts ("ABC") to pay CR the fee for placing Jay Edwards with ABC. This Memorandum is being filed in support of Plaintiff's Request for a temporary and a permanent injunction and Order.

## STATEMENT OF FACTS

CR is a Massachusetts corporation in the business of recruiting and placing candidates with client companies, primarily in the construction business. The business was founded by Colm Allen. (Verified Complaint, ¶1). Mr. Allen has spent 6 years developing relationships with current and potential clients and candidates throughout New England, but primarily in Massachusetts and Rhode Island. (Verified Complaint, ¶11).

Many, if not most, of CR's placements involve clients or candidates who have worked with CR in the past or who have referred other clients or candidates to CR. CR has established a reputation for discretion and honesty in its business transactions that has enabled it to establish long-term relationships with its clients and has led to repeat referrals and business. The formation of relationships and the establishment and maintenance of goodwill with clients and candidates is critical to the success of the Company. Without such established business relationships, it would be very difficult to make placements and identify qualified candidates. Therefore, CR's goodwill is a valuable and essential component of the Company's ability to do business. (Verified Complaint, ¶12).

CR has also developed marketing and placement procedures and a data base concerning its clients' needs and preferences and the identity and skills of potential candidates at great effort and expense. That information is not available to the public or to CR's competitors. (Verified Complaint, ¶ 13).

CR has retained Recruiters to identify and form relationships with clients and candidates on behalf of CR and to place candidates with CR's clients. Those individuals received extensive training from CR. To perform their jobs, they must use CR's confidential procedures and trade

secret information. Such information includes, but is not limited to, the identity and preferences of potential sources of candidates, clients and referrals, all of which are critical to CR's current and future business success. (Verified Complaint, ¶12 - 14).

CR retained Wisniewski as a Recruiter in early January 2004. At the time of his hire, Wisniewski had no prior experience recruiting construction company executives and had no relationships with, or information about, potential clients or candidates. (Verified Complaint, ¶15). Because Wisniewski had no relevant prior experience, Mr. Allen spent a great deal of time training him. He introduced Wisniewski to Company clients and referral sources and essentially taught him the business. (Verified Complaint, ¶16). Moreover, as a necessary prerequisite to performing his duties for CR, Wisniewski received confidential and proprietary information about CR's clients and candidates. That information included, among other things, the identity of clients who used outside recruiters to fill openings, candidates who may be interested in other employment opportunities, the names of individuals responsible for filling openings, and the preferences of clients and candidates. (Verified Complaint, ¶17). This knowledge was critical to Wisniewski's ability to place candidates.

From the date of his initial hire by CR, Wisniewski worked exclusively for that Company. He received support, assistance and extensive training from Mr. Allen and used CR's confidential information and client and candidate lists to make placements. However, at his insistence, Wisniewski was paid as a contractor and his commissions were reported on a form 1099. In early 2005, CR began to discuss with Wisniewski the fact that he should actually be classified as an employee. (Verified Complaint, ¶18). In May 2005, while the parties were still discussing Wisniewski's status, they agreed to execute an agreement clarifying his then-current

role in the company and protecting CR from future competition from Wisniewski. (Verified Complaint, ¶19).

That Agreement contained the following clauses:

> The Contractor agrees that s/he will not at any time during or after the term of this Agreement disclose the Company's Confidential Information or use it in any way, except on behalf of the Company, or with the advance permission of the Company's President. This Agreement applies to all Confidential Information belonging to the Company, including Confidential Information the Contractor acquired prior to the effective date of this Agreement and Confidential Information produced by the Contractor's own efforts.
>
> The Contractor further agrees, upon termination of this Agreement, to return all Confidential Information to the Company, including, but not limited to, all files, books, documents, computer disks or tapes, security and access codes and passwords, and other property belonging to or prepared on behalf of the Company, including Confidential Information produced by the Contractor's own efforts, and to refrain from making, retaining or distributing any copies of such information. The Contractor also agrees not to remove any Confidential Information from the Company's premises without the express, prior written consent of the Company.
>
> In the course of performing services for the Company, the Contractor will, and has, developed relationships with Clients and Candidates. Those relationships constitute goodwill belonging to the Company. To protect the Company's goodwill, the Contractor agrees that s/he will not, during the term of this Agreement and for a period of one year after the termination of this Agreement for any reason, directly or indirectly, solicit or attempt to persuade any Client or Candidate with whom s/he had any contact during his/her employment with the Company to sever the Client's or Candidate's relationship with the Company or enter into any contractual or business arrangement with the Contractor that is competitive with the services provided by the Company.

(Verified Complaint, Exhibit 1, ¶¶ 14 – 16, emphasis added). Wisniewski signed the Agreement on May 31, 2005. (Verified Complaint, Exhibit 1).

On November 8, 2005, Wisniewski became classified as an employee of CR. His job duties, location, responsibilities and compensation all remained the same. The only significant

change was that CR paid his FICA taxes and issued a W-2 for his commissions instead of a 1099 form. (Verified Complaint, ¶18).

CR had a number of long-standing clients with whom the Company had written search contracts. One such client is Advanced Building Concepts ("ABC"). A copy of CR's contract with ABC is attached to the Complaint as Exhibit 2. ABC's contract with CR, signed in 2004, provided that if ABC informed CR of a search, CR would be the company's exclusive recruiter for that search. CR had appointed Wisniewski to act as its agent in representing ABC. At some point in early to mid-January 2006, ABC's owner, John Brooks, informed Wisniewski that he wanted CR to recruit candidates for a position with his company. On January 16, 2006, Wisniewski resigned.

On the day he resigned, Wisniewski told CR representatives that he intended to sell toys. Mr. Allen later contacted Mr. Wisniewski, wished him well and stated that he would provide any assistance he could as long as Wisniewski did not "poach" CR's clients or candidates. Wisniewski assured Mr. Allen that he had no intention of competing with CR, and, instead, intended to sell toys in Europe. (Verified Complaint, ¶22)

Contrary to his Agreement and his representations to Mr. Allen, Wisniewski immediately sought to place a CR candidate, Jay Edwards, with ABC, and pressed Mr. Brooks to pay him, instead of CR, the commission due on that placement (the "Fee"). (Verified Complaint, ¶¶21-23). The Fee for that placement is $21,320. To CR's knowledge, ABC has no written contractual agreement with Wisniewski.

It is clear from the above that Wisniewski resigned from CR with the intention of placing a candidate with ABC and collecting the full fee for that placement. Indeed, Wisniewski did not inform any other employee or representative of CR of ABC's desire to hire another employee.

In mid-February 2006, CR learned that Wisniewski had placed Mr. Edwards with ABC. CR's attorney sent Wisniewski a letter stating that such placement was a direct violation of his agreement not to compete with CR and that Wisniewski should cease his competitive activity. (Verified Complaint, Exhibit 3). Wisniewski did not respond. CR also sent a letter it had received from its attorney to Mr. Brooks, describing that company's potential liability in the event that it paid Wisniewski for the placement. (Verified Complaint, Exhibit 4). CR's attorney also sent those communications and an explanatory letter to Mr. Brooks. (Verified Complaint, Exhibit 5). Mr. Brooks subsequently informed CR that it intended to pay Mr. Wisniewski the Fee for that placement on Friday, March 10, 2006 unless CR obtained a Court Order barring such payment. (Verified Complaint, ¶31).

CR's attorney attempted to negotiate a resolution with Wisniewski but was unsuccessful. (Verified Complaint, ¶32). Consequently, CR filed the instant Complaint and a Motion for a Preliminary Injunction.

CR does not wish to prevent Wisniewski from earning a living. It solely seeks to enforce those portions of the Agreement that prohibit Wisniewski, for one year, from: (1) attempting to place candidates with CR's clients; (2) soliciting CR's candidates; and (3) using CR's trade secrets. If CR's agreement with Wisniewski is enforced, Wisniewski will only be barred from poaching CR's hard-won clients and candidates and using its confidential information; he will be free to solicit and place other candidates with other companies. Moreover, it is important to note

that Wisniewski voluntarily resigned from CR – immediately after learning of a potential significant placement. CR reasonably believes that Wisniewski chose to resign as soon as ABC notified Wisniewski of that opening, intending to collect the full amount of the Fee to help start his own, competitive business.

## STANDARD OF REVIEW

The decision to grant a preliminary injunction lies within the sound discretion of the Court. *Iggy's Doughboys, Inc. v. Giroux*, 729 A.2d 701, 705 (R.I. 1999). In deciding whether to issue a preliminary injunction, the hearing justice must consider whether the moving party: (1) has a reasonable likelihood of success on the merits; (2) will suffer irreparable harm without the requested relief; (3) has the balance of the equities in his or her favor; and (4) has shown that the requested injunction will maintain the status quo. *Puccino v. Uttley*, 785 A.2d 183, 182 (R.I. 2001); *In Re. State Employees Union*, 587 A.2d 919 (R.I. 1991); *Leoni v. Town of New Shoreham*, 534 A.2d 871, 873 (R.I. 1987) (citations omitted). In determining whether injunctive relief is appropriate, the Court must balance the equities between the parties, weighing the relief which it sought against the harm which would be vested upon the other party if an injunction were to be granted. *Id.*, at 935, *Rhode Island Turnpike and Bridge Authority v. Cohen*, 433 A.2d 179, 1782 (R.I. 1981). Plaintiff in this case has fully satisfied that standard.

## ARGUMENT

### I. CR IS ENTITLED TO A PRELIMINARY AND PERMANENT INJUNCTION PROHIBITING WISNIEWSKI FROM VIOLATING HIS AGREEMENT WITH CR.

Wisniewski's Agreement with CR specifically provides that it is to be governed by Massachusetts law. Rhode Island courts recognize and will enforce the parties' choice of law. *Microfibres, Inc. v. McDevitt-Askew,* 20 F. Supp. 2d 316, 326 (D.R.I. 1998).

Massachusetts law provides that a non-compete agreement must be enforced if the restriction on the defendant's ability to compete "is reasonable in time and space, necessary to protect legitimate interests, and not an obstruction of the public interest." *Alexander & Alexander, Inc. v. Danahy*, 21 Mass. App. Ct. 488. 498 (1986); *Novelty Bias Binding Co. v. Schivrin*, 342 Mass. 714, 716 (1961) (where covenant not to compete is "reasonably limited in time and space and is coincident with the public interest" it is valid and is enforceable by injunction); Eastern Container Corp. v. Craine, 624 A.2d 833 (R.I. 1993); (2) misappropriation of trade secrets and intellectual property rights, *Abby Medical/Abby Rents, Inc. v. Mignacca*, 471 A.2d 189 (R.I. 1984); *Dial Media, Inc. v. Schiff,* 612 F. Supp. 1483 (D.R.I. 1985). Rhode Island courts apply the same standard. The covenant signed by Wisniewski fully satisfies those requirements. First, the covenant protects legitimate, valuable interests of CR -- its goodwill and confidential information -- and it does so by the least restrictive means possible.

Massachusetts courts recognize at least two "legitimate business interests" which may properly be protected by a covenant not to compete. These include the employer's "goodwill," or relationships with sources of business, or the former employer's confidential information.

*Cheney v. Automatic Sprinkler Corp. of America*, 377 Mass. 141, 147 (1979); *New England Canteen Service, Inc. v. Ashley*, 372 Mass. 671, 674 (1977).

In this case, Wisniewski's covenant not to compete against CR is enforceable both because he can use the goodwill which CR had established with clients and candidates to his advantage and CR's detriment, and because of the extensive confidential information he has acquired about those clients and candidates, which he can use to make placements with CR's clients and candidates. Consequently, Wisniewski's non-compete agreement is enforceable under every applicable standard.

**A. The Covenant Is Necessary to Protect CR's Goodwill.**

Massachusetts courts have repeatedly recognized that companies develop and maintain relationships with customers, referral sources and other key business sources at great expense. A former employee who uses those relationships can severely damage his first employer since the client or other important contact imputes the employer's reputation and past work to the employee. "[T]he former employee's close association with the employer's customers [or sources of business] may cause those customers to associate the former employee, and not the employer, with products of the type sold to the customer through the efforts of the former employee." *All Stainless, Inc. v. Colby*, 364 Mass. 773, 779-80 (1974); *see also, Kroger v. Stop & Shop Companies*, 13 Mass. App. Ct. 310, 316 (1922) ("Goodwill generally applies to customer relationships. Thus, individuals who make sales, or place candidates, have the capacity to injure the goodwill of their employers."). (emphasis added). Courts have consistently held that a reasonable covenant not to compete should be enforced to prevent such loss of goodwill. *Id.*

Over the course of many years, CR had developed valuable relationships with clients, candidates and referral sources. Wisniewski used CR's business relationships with clients and candidates and also developed relationships on behalf of CR, relying upon CR's reputation and goodwill. His decision to compete with CR by soliciting business from CR's clients and placing CR's candidates with those clients misappropriates Mr. Allen's and CR's years of hard work establishing those relationships and CR's reputation. Wisniewski's solicitation of CR's clients and customers has caused, and will cause, irreparable harm to CR's business and goodwill, is a clear breach of his agreement with CR, and must be enjoined. *See, Blackwell v. E.M. Helides, Jr., Inc.*, 368 Mass. 225, 229 (1975) (Injunction should prohibit salesperson from any solicitation in former territory since any other limit, "would allow Blackwell to ... exploit his previous contacts with individuals who employed the Helides office... "). Moreover, since CR relies on clients and candidates both for initial and repeat business, it is particularly necessary and appropriate to enjoin Wisniewski from exploiting these relationships. *Cf. Folsom Funeral Service, Inc. v. Rodgers*, 6 Mass. App. Ct. 843 (1978) (citing lack of evidence of "'repeat' purchases of undertaking services"), *National Hearing and Centers Inc. v. Avers*, 2 Mass. App. Ct. 289, 291 (1974) (lack of "'repeat' sales" may justify refusal to enforce covenant.).

Indeed, in this case, Wisniewski has exploited CR's relationship with its clients by placing Mr. Edwards with ABC, a long-term client of CR. He has made it clear that he intends to continue his competitive activity. Moreover, CR has learned that Wisniewski was soliciting CR's clients during his employment with CR, in anticipation of his resignation, all in violation not only of his Agreement with CR, but also his fiduciary obligations as an employee of the

Company. (Verified Complaint, ¶27). Therefore, Plaintiff's request for a permanent injunction must be granted.

### B. <u>**The Covenant Is Reasonable In Time, Space and Scope**</u>.

The agreement not to compete signed by Wisniewski falls well within the guidelines for duration and geography enunciated by Massachusetts Courts. First, it only lasts for one year, which is clearly at the lowest end of time periods found to be reasonable and enforceable. *See, e.g., Blackwell*, 368 Mass. at 229 (three year restriction not unreasonable); *All Stainless*, 364 Mass. at 779 ("the two year restriction is reasonable").

Second, the covenant is restricted solely to the clients and candidates who have contractual relationships with CR. Wisniewski is free to recruit candidates for placement in any allied construction businesses. Thus, the covenant is narrowly drawn solely to prevent Wisniewski from taking advantage of CR's client and candidate base. In light of the fact that the covenant is necessary to protect CR's legitimate interest, and is reasonable in time, space and scope, it must be enforced.

## II. <u>**WISNIEWSKI'S USE OF CR'S CONFIDENTIAL, PROPRIETARY AND TRADE SECRET INFORMATION MUST BE ENJOINED.**</u>

During his employment with CR, Wisniewski was necessarily given access to CR's trade secrets, as well as other confidential and proprietary information, including the identity of clients and candidates. He also was informed about clients' needs, candidates' backgrounds, their future plans, and other data about clients and candidates collected and maintained by CR. Massachusetts Courts have accepted the definition of trade secret contained in the Restatement of Torts, §757, Comment b:

> [A] trade secret may consist of any . . . information which is used in one's business, and which gives him an opportunity to obtain an advantage over competitors who do not know or use it. It may be . . . a list of customers . . ..

*See J.T. Healy & Son, Inc. v. Gary A. Murphy & Son, Inc.*, 357 Mass. 728, 736 (1970). That is precisely the information Wisniewski obtained from and is using against CR.

To be entitled to protection as proprietary information, the employer must use reasonable steps to keep the information confidential. *USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 98 (1979). One of the key factors to be considered in determining whether an employer has taken such reasonable steps is "the existence or absence of an express agreement restricting disclosure." *Id.* Here, CR did require Wisniewski to sign an agreement prohibiting him from using or disclosing its confidential information. By requiring Wisniewski to sign such an agreement, CR properly and prudently sought to protect its trade secrets and confidential and proprietary information. *See USM Corp. v. Marson Fastener Corp.*, 379 Mass. 90, 98 (1979) (the existence of an express agreement restricting disclosure indicates that the possessor of trade secrets took reasonable security precautions to protect those secrets). Thus CR is entitled to a preliminary and permanent injunction prohibiting Wisniewski from continuing to use its confidential, trade secret, information.

Under Mass. Gen. Laws Ch. 93, §42A, CR is entitled to the requested injunction to prevent him from using CR's trade secrets. That statute provides:

> In an action by an employer against a former employee under the provisions of this section for the conversion of a trade secret and where such conversion is in violation of the terms of a written employment agreement between said employer and employee, said employer shall, upon petition, be granted a preliminary injunction if it is shown that said employee is working in a directly competitive capacity with his former employer in violation of the terms of such agreement and that in violation of the terms of such agreement said employee has used such trade secret in such competition.

(Mass. Gen. Laws ch. 93, §42A, emphasis added).

As discussed above, during his employ by CR, Wisniewski received confidential information about supply sources and customers which CR regards as trade secrets. Wisniewski is using such information, "in a directly competitive capacity ... in violation of the terms of [a written employment] agreement." Mass. Gen. Laws ch. 93, §42A. Under the terms of the above statute, therefore, Wisniewski's competitive activity must be enjoined.

Moreover, under Rhode Island law, any information a former employee uses that would greatly abuse his or her former employer's trust falls under the definition of confidential information. *Colonial Laundries v. Henry*, 138 A. 48 (R.I. 1927); *see also, Rego Display*, supra, 379 A.2d at 1101. In this case, Wisniewski received information about clients and candidates that was developed by CR over the course of several years. He relied upon and benefited from CR's goodwill when he made contacts with these clients and candidates on behalf of the company. He then abused this confidence by using and contacting the same clients and candidates to make a placement that had been offered to CR and which he discovered during his employment with CR.

Rhode Island's Trade Secrets Act defines trade secrets as:

> Information, including a formula, pattern, compilation, program, device, method, technique, or process that:
>
> (i) derives independent economic value, actual or potential, from not being generally know to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

R.I. Gen. Laws § 6-41-1(4). Wisniewski's use of CR's confidential information, methods, marketing and historical knowledge constitutes a misuse of CR's trade secrets, in violation of the Trade Secrets Act, R.I. Gen. Laws § 6-41-1 et seq. *See, MacFarland, et al v. Brier*, 769 A.2d 605, 607 (R.I. 2001). Injunctive relief is also appropriate to prevent a violation of that Act. R.I. Gen. Laws § 6-41-2. Likewise, the Trade Secrets Act contemplates the award of exemplary damages and attorneys fees. Unlike at common law, the award of exemplary damages is appropriate to punish "intentional and egregiousness conduct", rather than the higher standard of conduct that is tantamount to criminality. *MacFarland*, 769 A.2d at 611-612.

## III. CR IS LIKELY TO SUCCEED ON THE MERITS AND WILL SUFFER IRREPARABLE HARM IF THE INJUNCTION IS DENIED.

CR is entitled to the requested preliminary injunction because it has met its burden of demonstrating likelihood of success on the merits, and that it will suffer irreparable harm if the injunction is denied. *Brookline v. Goldstein*, 388 Mass. 443, 447 (1983); *Commonwealth v. County of Suffolk*, 383 Mass. 286, 288 (1981).

There is no question that, if the preliminary injunction is not granted, CR will be irreparably harmed. Loss of CR's goodwill, including the severance of its on-going relationships with clients and customers, clearly constitutes irreparable injury. *See Blackwell v. E.M. Helides, Jr.*, 368 Mass. 225 (1975). Such relationships are critical to CR's future recruiting efforts and placements. Thus, the damage that could result if Wisniewski uses CR's goodwill with clients or customers to place candidates are on-going and simply incalculable. *See, e.g., New England Patriots Football Club, Inc. v. University of Colorado*, 592 F.2d 1196 (1st Cir. 1979); *Edward R. Sage Co. v. Foley*, 12 Mass. App. Ct. 20, appeal denied, 384 Mass. 816 (1981).

Not only will CR suffer irreparable damage should the requested injunction be denied, but, as discussed above, the covenants not to compete are fully enforceable. Therefore, CR has demonstrated that it is likely to succeed on the merits.

## CONCLUSION

Pursuant to Fed. R. Civ. P. 65, CR requests that this Court issue a Preliminary and Permanent Injunction, as set forth in it's Complaint, prohibiting Wisniewski from violating his Employment Agreement with CR, contacting CR's clients or candidates and from disclosing or using CR's trade secrets pursuant to Mass. Gen. Laws ch. 93, §42A.

For the reasons stated above, CR requests that this Court enter a temporary restraining order pursuant to Fed. R. Civ. P. 65(b) and, after hearing, a permanent injunction granting the relief requested in the Verified Complaint.

Respectfully submitted,
CONSTRUCTION RECRUITERS, INC.
By Its Attorneys,

Raymond A. Marcaccio, Esq. (#3569)
OLIVERIO & MARCACCIO LLP
55 Dorrance Street, Suite 400
Providence, RI 02903
(401) 861-2900
(401) 861-2922 Fax
ram@om-rilaw.com

Of Counsel:

Mary L. Marshall, Esq.
MARSHALL LAW GROUP
37 Walnut Street, Suite 300
Wellesley, MA 02481
(781) 235-4855
mlm@socialaw.com

Dated: March 10, 2006

**CERTIFICATION**

I hereby certify that a true copy of the foregoing *PLAINTIFF'S MOTION FOR A TEMPORARY RESTRAINING ORDER* was hand delivered to Larry Wisniewski, 158 Salina Street, Providence, RI 02908 and mailed to David Martland, Esq.[1], 1100 Aquidneck Ave., Middletown, RI, 02842, attorney for Defendant Advanced Building Concepts on the 10th day of March, 2006.

______________________

[1] Attorney Martland agreed to accept service on behalf of his client.